This appeal arises out of a jury verdict convicting Appellant of murder in violation of R.C. 2903.02(A) with a firearm specification. Appellant argues that the court improperly excluded evidence and engaged in misconduct. He also contends ineffective assistance of defense counsel and prosecutorial misconduct. For the following reasons, this Court affirms the jury verdict.
The grand jury indicted Appellant for murder in violation of R.C. 2903.02 (A) (B) and improperly discharging a firearm into a habitation in violation of R.C. 2923.161(A) (C) with firearm specifications. Appellant admitted at trial that he shot his brother-in-law Lester Stanford but claimed that he shot him in self-defense. (Tr. p. 477).
The State's main witness, Vanessa Stanford, the wife of Lester and sister of Appellant, testified that on the night of July 21, 1994, she, Lester and three of her children went night fishing and returned home to find her eldest son and Appellant at the Stanford home. (Tr. pp. 193-194, 197). Appellant wanted to store his car at their home because the car sustained damage after Appellant's involvement in a serious automobile accident a month earlier. (Tr. p. 197).
Mrs. Stanford testified that after arriving home that night, she and Lester exchanged words in their bedroom with the door closed while Appellant and the children were in the living room. (Tr. p. 203-204). Mrs. Stanford recalled that Lester had taken cocaine that night although she believed that he was not intoxicated. (Tr. pp. 193, 195, 204). Mrs. Stanford explained that Lester did not touch her during the argument and that she and Lester did not scream at each other but argued over a phone number he had found. (Tr. pp. 193, 225). She testified that she left Lester in the bedroom after kissing him and went to lay down in the living room with her children. (Tr. p. 205).
Mrs. Stanford recalled that after Lester came out of the bedroom, he calmly told Appellant that he wanted to speak to him and told Appellant that he did not want guns in their house. (Tr. p. 205). She recalled that Appellant "went off" by becoming argumentative and agitated. (Tr. pp. 205-206, 207). Mrs. Stanford told the jury that she and Appellant began arguing and that Appellant went to the living room to get his shoes and that she, Appellant and Lester all walked outside. (Tr. pp. 207-210). Mrs. Stanford testified that once outside, Appellant began running toward his car parked on the street while she stood on the porch and Lester walked back into the house. (Tr. pp. 207-210). Mrs. Stanford related that Appellant stopped short of his car, turned around, pulled out a gun and began walking back toward the house. (Tr. pp. 210-211). Mrs. Stanford tried to pull Appellant back, but he opened the front screen door and shot into the house, hitting Lester. (Tr. pp. 211-212). Lester later died.
On cross-examination, Mrs. Stanford admitted that Lester had taken cocaine before they went fishing and stated that she and Lester dropped the children off at home after fishing and went to buy cocaine before returning home. (Tr. p. 235-236). She also told the jury that Lester had taken cocaine upon their return home. (Tr. p. 236). Mrs. Stanford admitted that she and Lester exchanged heated words in the bedroom and that Lester kept a gun in the bedroom but she testified that she did not see a gun on his person that night. (Tr. pp. 217, 224-225). She also denied that Lester pushed her when the three were arguing. (Tr. pp. 224, 238-239).
Mrs. Stanford also testified that Lester committed violent acts against her in the past but explained that Lester was changing and that she was committed to her marriage. (Tr. p. 193). She admitted that she had filed a number of domestic violence complaints against Lester and that she had thrown him out of the house on a number of occasions but always let him return. (Tr. pp. 221-222, 226). She also acknowledged that just a month prior she had evicted Lester after he hit her but explained that she had hit him first. (Tr. p. 226). When asked if he was a violent man when under the influence of cocaine and alcohol, Mrs. Stanford replied that Lester had changed. (Tr. p. 227).
The Stanfords' thirteen year old son, Jamal, also testified for the State. Jamal recalled that he went fishing with his family and upon arriving home, he sat in the living room and watched television with Appellant and his two brothers. (Tr. pp. 257-258). He thought that his father was intoxicated, but was not sure. (Tr. pp. 277-278). Jamal told the jury that Appellant and Lester were arguing and that he heard his dad ask Appellant if he had a gun in the house and Appellant replied that the gun was in his car. (Tr. p. 259). Jamal heard Appellant say that he was going to leave and as Appellant put his shoes on, he and Lester began arguing again. (Tr. p. 261). Jamal testified that he got up from the living room and went over to where his mother, father and Appellant were standing. He saw Appellant outside in the yard arguing with his father, who was near the front door. (Tr. p. 263). Jamal explained that he saw Appellant take a gun out of his pants, walk up the porch steps toward his father as his mother was pulling Appellant away and heard Appellant say "I don't have to take this," as he shot his father in the stomach. (Tr. p. 265).
The Stanfords' eleven year old son, Travis, also testified for the State. Travis testified that after returning home from night fishing on July 21, 1994, he watched television in the living room with his siblings and Appellant, who was on the phone, until his parents came home and that he then went upstairs to bed. (Tr. p. 288). Travis recalled that he saw his father drinking a forty ounce bottle of beer while they were fishing. (Tr. p. 317). Travis tried to sleep but heard Appellant arguing with his mother. (Tr. p. 304). Travis did not hear his father yelling. (Tr. p. 304). Travis then heard a gunshot and ran downstairs and asked what happened to which Appellant replied that he had shot Lester. (Tr. p. 307). Travis told the jury that the day after the shooting, he retrieved his father's gun out of the closet in his parents' bedroom and gave it to his grandmother. (Tr. p. 299).
Appellant testified on his own behalf. He stated that on July 21, 1994, he went to the Stanford home and an argument ensued between he and Lester after Lester asked him if he had a gun in his possession. (Tr. p. 471). Appellant told Lester that he had a gun in his car parked on the street and Lester told Appellant that he had to leave because Lester did not want guns in the house. (Tr. p. 471-472). Appellant testified that Lester then went into his bedroom where Appellant knew Lester kept a gun and cocaine. (Tr. pp. 472-473). Appellant explained that Lester then emerged from the bedroom and stood over him, sweating, breathing heavily, and looking at Appellant out of the corner of his eye. (Tr. p. 472-473). Appellant testified that at that point he thought that Lester was "high", that he knew Lester became violent when he was high, and that he was "going to do something," so Appellant decided to leave. (Tr. p. 472-473).
Appellant further told the jury that he began looking for his shoes with Lester following him and that Lester went back into his bedroom a second time and returned with a pair of black shorts on and his left hand in his pocket. (Tr. p. 472-476). Appellant believed that Lester had a gun on him at that time. (Tr. p. 473). Appellant stated that his gun was not in the car but was hidden under the couch and that he loaded his gun while Lester was in the bedroom the second time. (Tr. p. 480).
Appellant related that he feared for his life at that point because he thought Lester had a gun on him. Appellant stated that he had seen what Lester had done to Vanessa and their children on previous occasions. (Tr. pp. 475). Appellant told the jury that as he was walking out the door with his back toward Lester, he heard a commotion and turned around to see Lester push Vanessa and lunge toward him and that he then shot Lester, intending to wound him and not to kill him. (Tr. pp. 474, 482-483, 501). Appellant testified that he could not run away because of prior serious injuries sustained in the automobile accident of a month earlier. (Tr. p. 475).
On cross-examination, Appellant admitted that he saw no gun on Lester and that Lester neither touched him nor threatened him that night. (Tr. pp. 485, 487, 500-502). Appellant also admitted that he never saw Lester strike or raise a hand to another person. (Tr. pp. 500-502).
On November 15, 1994, after a full trial, the jury convicted Appellant of the murder of Lester Stanford with a firearm specification. On November 17, 1994, the court sentenced Appellant to imprisonment of an indefinite term of fifteen years to life and three years actual incarceration on the gun specification.
On December 2, 1994, Appellant filed his notice of appeal. Appellant later filed a letter with this Court requesting that his appointed appellate counsel be removed because he failed to file an appellate brief on his behalf. Appellant requested that this Court appoint other counsel to represent him on appeal. On January 6, 1997, this Court denied the request finding that existing appellate counsel filed a brief.
In his first assignment of error, Appellant contends:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN SUSTAINING THE OBJECTION OF THE STATE TO SPECIFIC INSTANCES OF CONDUCT OF THE DECEDENT WHICH DEMONSTRATED HIS PROPENSITY FOR VIOLENCE."
On direct examination at trial, Appellant's counsel asked Appellant about Lester's reputation for violence. (Tr. p. 464). Appellant testified that he knew others who knew about Lester's reputation for violence and that Lester was a violent man when drinking alcohol and smoking cocaine. (Tr. p. 464). Appellant began testifying about an incident of violence that occurred between Lester and his sister over eleven years ago. (Tr. p. 464-465). The State objected without stating grounds and the court sustained the objection without stating grounds. (Tr. p. 465).
Defense counsel asked to approach the bench and the court stated, "[t]hat's too far." (Tr. p. 465). Defense counsel asked, "[y]ou want me to go recent?" and asked Appellant, "Rodney, how about a more recent time?" to which the State again objected without stating grounds and the court sustained. (Tr. p. 465). A discussion was had off of the record and defense counsel then continued with Appellant by asking him if he ever saw his sister "beat up." (Tr. p. 465). Appellant answered that he had seen his sister "beat up" numerous times and described various injuries that he observed on her body, including black eyes, a broken nose and a swollen head. (Tr. p. 466). Appellant again began describing a specific incident stating that "[o]n one occasion he pushed her through the. . ." to which the State objected and the court sustained. (Tr. p. 466). Appellant then limited his testimony to describing further observations of his sister's injuries. (Tr. p. 466). Defense counsel then proceeded to question Appellant about the night of the shooting.
After presentation of the case in full and after the jury was excused, defense counsel referred back to the sustained objections and proffered that the record reflect that Appellant would have testified regarding ". . .specific things and statements that both Lester and Vanessa made to him regarding these beatings." (Tr. p. 510). Defense counsel assumed that the State objected on hearsay grounds and argued that the statements would have been admissible as proof of defendant's state of mind to make for a showing of self defense. (Tr. p. 510). The State responded that its objection was not based upon hearsay but was made because the specific instances did not take place in front of Appellant and defense counsel failed to elicit further information about these incidents and Appellant's personal knowledge of them. (Tr. p. 511).
Appellant argues that the court committed prejudicial error in sustaining objections and not allowing him to testify about specific acts of domestic violence that Lester had perpetrated upon his sister. Appellant contends that these acts were offered to prove his state of mind on the night of the shooting and to justify his claim of self-defense by showing why he had cause to fear for his life. Appellant cites Evid.R. 404 (A) (2) and quotes extensively from State v. Baker (1993), 88 Ohio App.3d 204, but fails to provide any analysis or refer to that portion of the record he believes is relevant.
An appellate court reviews a trial court's admission or exclusion of evidence under the abuse of discretion standard.State v. Finnerty (1989), 45 Ohio St.3d 104, 107. A trial court abuses its discretion when it acts in an unreasonable, arbitrary or unconscionable manner. Id. A reviewing court should not substitute its judgment for that of the trial court.Id. at 108, citing State v. Jenkins (1984), 15 Ohio St.3d 164,222.
Evid.R. 404(A) (2) provides in relevant part that:
 "(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused * * * is admissible; * * *."
Evid.R. 405, providing the methods by which character may be proven, states in relevant part:
 "(B) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a defense, proof may also be made of specific instances of his conduct."
Courts have held that a defendant may testify as to specific instances of violent conduct of the victim when the defendant claims self defense in a homicide case and wishes to use the instances to show that the victim was the first aggressor or to show the defendant's state of mind at the time of the incident. See State v. Baker (1993), 88 Ohio App.3d 204, 208; State v.Carlson (1986), 31 Ohio App.3d 72, paragraph one of the syllabus.
To assert self defense, the defendant must prove: "(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that the only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger." State v. Thomas (1997), 77 Ohio St.3d 323, 326, citingState v. Williford (1990), 49 Ohio St.3d 247, 249, citing Statev. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus. This Court has allowed a defendant to testify as to specific instances of a victim's violent conduct to show state of mind as to self defense. State v. Austin (1996), 115 Ohio App.3d 761,764.
We find that the trial court did not abuse its discretion in the instant case by excluding appellant's testimony about prior instances of domestic violence that occurred between Mrs. Stanford and Lester. Domestic violence is a unique situation whose focus is the exertion of power over a family member by another family member. Appellant argues that Evid.R. 404(A) andBaker, supra apply to allow his testimony on the specific instances of Lester's prior violent conduct toward his sister because it is relevant to show Appellant's state of mind on the night of the shooting. Appellant's argument is misplaced.
In Baker, the court of appeals held that the trial court erred in excluding testimony by the defendant about prior instances of the victim's violent conduct.88 Ohio App.3d at 210-211. The court held that a defendant who asserts self defense should be permitted to testify as to the victim's prior instances of violence to show his state of mind at the time of the crime. Id. at 211. We agreed in Austin when we found that:
 "a defendant, when arguing self-defense, may testify about specific instances of the victim's prior conduct in order to establish the defendant's state of mind. These events are admissible in evidence, not because they establish something about the victim's character, but because they tend to show why the defendant believed the victim would kill or severely injure him."
(1996), 115 Ohio App.3d at 764, quoting State v. Carlson
(1986), 31 Ohio App.3d 72. While defendant's state of mind is crucial to the defense of self defense, State v. Koss (1990),49 Ohio St.3d 213, 215, when the defendant wishes to testify as to specific instances of violence of a victim to show the defendant's state of mind, this does not involve character as proof of conduct and thus neither Evid.R. 404(A) nor Evid.R. 405 apply. Gianelli and Snyder, Gianelli Snyder Rules of Evidence Handbook (1997) 89, commentary section (C). The general relevance rules of Evid.R. 401 and Evid.R. 403 apply instead. Id.
Appellant testified that Lester never touched or raised a hand to him on the night of the shooting and never threatened him on that night or in the past. (Tr. p. 502-503). Thus, Appellant's testimony about the specific instances of domestic violence between Mrs. Stanford and Lester would only have served to portray the "* * *alleged victim of the offense * * *as a wife-beater and, consequently, a figure to be despised by the jury. The evidence would have had a tendency to inflame the passion and prejudice of the jury against the victim of the alleged offense." State v. Catlin (1990), 56 Ohio App.3d 75,78. The trial court properly excluded the evidence because its only use was to show the violent character of the victim toward his spouse, not toward Appellant or others. Although the evidence may have been relevant, its probative value was substantially outweighed by the danger of unfair prejudice under Evid.R. 403.
Further, the testimony would have been cumulative in that Mrs. Stanford had already testified for the State and admitted that she had filed a number of domestic violence complaints against Lester and recalled an incident of violence that had occurred just one month prior to the shooting. (Tr. pp. 193, 221-222, 226-230). Defense counsel brought out Appellant's knowledge of these violent incidences when he asked Mrs. Stanford on cross examination if she would try to reconcile the relationship between Lester and her brother after she forgave Lester for striking her. (Tr. p. 222). Evid.R. 403(B) provides that relevant evidence may be excluded if its probative value is substantially outweighed by needless presentation of cumulative evidence.
Further, the first objection regarding testimony as to a specific act of domestic violence occurred when Appellant sought to testify about an incident that occurred over eleven years ago. (Tr. p. 464). It has been held that evidence of a victim's violent acts toward a defendant who pleads self defense may be excluded where the acts occurred nine years before the homicide. State v. Huston (June 19, 1985), Allen App. No. 1-85-62, unreported. We agree and find that an incident occurring over eleven years ago is far too remote and would only seek to inflame the jury.
The other two objections to the testimony of Appellant about specific instances of Lester's past violent conduct were properly sustained as they would have been cumulative and prejudicial. (Tr. pp. 465-466). Further, the court allowed Appellant to testify as to Lester's reputation for violence and specifically Lester's aggressive and violent nature when under the influence of drugs and alcohol. (Tr. pp. 464, 499). Appellant also described various injuries that he observed regarding his sister over the years. (Tr. pp. 464-466).
Assuming, arguendo, that the trial court erred in excluding the specific instances of Lester's conduct, the errors were harmless. The jury did have ample evidence about Lester's prior violent conduct in front of them. While the jury did not possess the graphic details about the instances of domestic violence, they had testimony from Mrs. Stanford confirming that she was subject to domestic violence, testimony from Appellant about the injuries he observed on Mrs. Stanford and testimony from Appellant about Lester's violent reputation and violent behavior when under the influence of drugs and alcohol. The graphic details about these specific instances of domestic violence would have served only to distract the jury and impassion them. Appellant's first assignment of error is without merit.
In his second assignment of error, Appellant contends:
 "DEFENDANT WAS DENIED A FAIR TRIAL AS GUARANTEED UNDER THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION, DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL, PROSECUTOR MISCONDUCT, AND THE CONDUCT OF THE TRIAL PROCEEDINGS BY THE TRIAL JUDGE."
Appellant first asserts that defense counsel was ineffective when he failed to make a Crim.R. 29 motion for acquittal at the close of the State's case. Appellant also argues defense counsel's ineffectiveness in failing to object when the prosecutor requested that the trial court read a defense witness his constitutional rights in the jury's presence.
During the prosecutor's cross examination of defense witness Mark Carter, Mr. Carter testified that he knowingly held onto the gun that Appellant used to shoot Lester after Appellant turned himself into the police. (Tr. p. 390). The prosecutor asked Mr. Carter, "[y]ou knowingly held onto evidence of a crime?" to which Mr. Carter replied, "[c]orrect." (Tr. p. 390). The prosecutor then requested in front of the jury that the court inform Mr. Carter of his constitutional rights. (Tr. p. 390). Defense counsel requested a sidebar which was had off of the record. (Tr. p. 391). Thereafter, the court informed Mr. Carter of his constitutional rights in front of the jury, stating that the prosecutor "has elicited questions from you which may or may not give rise to your involvement in the obstruction of evidence of a crime." (Tr. p. 392). The court informed Mr. Carter that he could exercise his rights and choose not to continue answering the prosecutor's questions if he desired. (Tr. p. 392). Mr. Carter stated that he had no problem continuing to answer the prosecutor's questions and his testimony proceeded. (Tr. p. 392).
Appellant correctly cites Strickland v. Washington (1984),466 U.S. 668, for the appropriate standard by which a court evaluates a claim of ineffective assistance of counsel. InState v. Reynolds, the Ohio Supreme Court described theStrickland standard in holding that: "In order to prevail on a claim of ineffective assistance of counsel, [Appellant] must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." (1998), 80 Ohio St.3d 670, 674, citingStrickland at 687; State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus. Appellant must meet two prongs in order to establish ineffective assistance of counsel. First, he must produce evidence that counsel acted unreasonably to show that counsel's conduct was objectively deficient. State v. Keith (1997), 79 Ohio St.3d 514, 534. Secondly, Appellant must prove that but for counsel's errors, it is reasonably likely that the outcome of the trial would have been different. Id.
Crim.R. 29 provides that a court shall enter a judgment of acquittal sua sponte or on the motion of a defendant if "* * *the evidence is insufficient to sustain a conviction of such offense or offenses." Conversely, a trial court shall not order a judgment of acquittal if "* * *reasonable minds can reach different conclusions whether a material element of the crime has been proven beyond a reasonable doubt." State v. Bridgeman
(1978), 55 Ohio St.2d 261, 261. Bridgeman also held that an ". . .issue will be presented to the jury if the evidence, viewed in the light most favorable to the prosecution, is such that reasonable minds might fairly find guilt beyond a reasonable doubt." Id. In reviewing a trial court's ruling on a Crim.R. 29 motion, this Court must construe the evidence in a light most favorable to the prosecution. State v. Wolfe (1988),51 Ohio App.3d 215, 216, It has been held that a failure of defense counsel to object or make a motion for judgment of acquittal under Crim.R. 29 does not constitute ineffective assistance of counsel where the State's case in chief strongly links defendant to the crimes of which he is accused. State v.Mills (1991), 73 Ohio App.3d 27, 35.
We find that in the case at hand that defense counsel's failure to motion for acquittal did not rise to the level of deficient performance. Further, the lack of an acquittal motion or objection did not undermine the trial such that its outcome was reasonably likely to be different. The State put on strong evidence such that reasonable minds could find Appellant guilty of the crimes for which he was charged. Appellant provides no argument to support a contrary finding and upon review of the record, we find such a finding is unwarranted.
Appellant's assertion of ineffective assistance of defense counsel in failing to object to the reading of constitutional rights to a defense witness also falls under theStrickland test. Counsel's failure to object is not deficient performance in and of itself. Further, even assuming that defense counsel erred, it is highly unlikely that the outcome of the trial would have been different. The advisement of rights in this case did not deny Appellant a fair trial or affect his substantial rights because Mr. Carter's testimony was not crucial to Appellant's defense; it neither supported nor negated his claim of self defense. The relevant testimony of Mr. Carter revealed that he knew that Appellant carried a gun (Tr. p. 384); the gun Appellant gave him was owned by Appellant (Tr. p. 386); Appellant gave him the gun to hold and to turn over to Appellant's mother if a legal situation presented itself. (Tr. p. 388). Mr. Carter knew that Appellant and the gun were involved in a shooting and Mr. Carter knew the police would be interested in the gun. (Tr. p. 389). Mr. Carter held onto the gun for some time, knowing that Appellant had been charged with shooting Lester. (Tr. p. 389). At the prosecution's request, the court then informed Mr. Carter of his constitutional rights and his right to discontinue testifying.
It is possible that the jury may have thought that perhaps Mr. Carter would be arrested for his withholding of evidence. However, his testimony was not so crucial to the defense that if his credibility were undermined by reading him his rights, this would have affected the outcome of the trial or of Appellant's right to a fair trial. The error was harmless in that even negating the circumstances surrounding Mr. Carter's testimony, the State's evidence presented a strong case against Appellant.
Appellant further alleges in his second assignment of error that the prosecutor committed prejudicial misconduct in requesting in front of the jury that the trial court inform Mr. Carter of his constitutional rights. Appellant makes the same charge against the trial court in warning Mr. Carter of his rights in the jury's presence. Appellant contends that the prosecutor intended to send the message to the jury that Mr. Carter was not to be believed. He argues that the prosecutor knew in requesting the recitation of Mr. Carter's rights that this would discredit his testimony. Appellant contends that both the prosecutor and the trial court created prejudicial error by taking this action.
In State v. Maurer, the Ohio Supreme Court held that "[i]n general terms, the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial." (1984), 15 Ohio St.3d 239,266 [citations omitted]. Further, the Court held that "* * *instances of prosecutorial misconduct can be harmless when they are incidental and isolated." State v. Lorraine (1993),66 Ohio St.3d 414, 420, citing State v. Jenkins (1984), 15 Ohio St.3d 164,217, at fn. 49.
In State v. Schaub (1976), 46 Ohio St.2d 25, defense counsel called a witness to the stand and the prosecutor interrupted the questioning to request that the court advise the witness of his constitutional rights because the prosecutor indicated that the witness may have been involved in unlawful activities. The court complied by informing the witness of his constitutional rights, including the right to remain silent. Id. The defense witness chose to discontinue his testimony. The Supreme Court of Ohio found such conduct appropriate. Id. at 28.
While Schaub involved a three judge panel as trier of fact,State v. Halley (1994), 93 Ohio App.3d 71, involved a prosecutor's warning of perjury and self-incrimination to a witness in front of the jury. While the court held that these warnings should not ordinarily occur in the jury's presence, the court found that the defendant failed to demonstrate prejudice resulting from the warnings and found that it was "* * *clear beyond any reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty." Id. at 79-80, citing State v. Smith (1984), 14 Ohio St.3d 13, and United States v. Hasting (1983), 461 U.S. 499.
The Ohio Supreme Court has also held that "[i]f it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found appellant guilty, then his conviction will not be reversed." State v. Loza (1994), 71 Ohio St.3d 61,78, citing Smith, supra.
In the case at hand, the better procedure would have been for the prosecutor to request a sidebar and ask that the court excuse the jury so that the court could inform Mr. Carter of his rights and ask him if he wished to continue testifying. However, we find no pattern of misconduct demonstrated in the record on the part of the prosecutor. Further, as inHalley, supra, Appellant does not demonstrate prejudice resulting from the fact that these warnings occurred in front of the jury. While Appellant asserts that this prejudiced the outcome of the case because it discredited his witness, Mr. Carter's testimony, as explained and referenced above, was not crucial so as to render the error prejudicial. The jury would have found Appellant guilty absent the actions of the prosecutor and the trial court.
Appellant's final contention alleges further misconduct on the part of the trial court in prohibiting defense counsel from filing motions after the State rested its case. He claims that this substantially affected the outcome of his case. The trial transcript reveals that after the State rested its case, the court stated to defense counsel: "Court will give you leave to file whatever motions you may wish to file at the conclusion of the prosecutor's case. Rather than have the jury acts as Jacks-in-the-box, jump up and jump down — are you prepared to go forward with the defense at this time?" to which defense counsel replied, "We are, Your Honor." (Tr. p. 381).
This part of Appellant's assignment of error is also without merit. The transcript does not reveal that the court absolutely prevented counsel from filing any motions or from objecting or otherwise making a motion for a sidebar conference. Further, neither the record nor Appellant's brief suggests that defense counsel desired to make any motion at that point. Assuming, arguendo, that the court committed error, the error was not prejudicial as it did not otherwise affect the outcome of Appellant's case.
For all of the foregoing reasons, we find that the assignments of error advanced by Appellant are without merit. Accordingly, the jury verdict is hereby affirmed.
Cox, P.J., concurs.
Donofrio, J., concurs.
APPROVED:
 _________________________ CHERYL L. WAITE, JUDGE