Kinkade, J.
 

 McGaw, plaintiff in error, was indicted under Section 12420, General Code, for maliciously shooting one Frank Peleggi with intent to wound. He was tried, convicted, and sentenced to serve a term of not less than one year nor more than twenty years in the Ohio penitentiary. This judgment of the trial court was affirmed by the Court of Appeals.
 

 McGaw prosecutes error to this court, assigning two grounds of error: First, the rejecting of competent testimony offered in support of his defense of self-defense; and, second, a wrong statement of the law made by the trial judge in his charge to the jury, bearing also upon the question of self-defense.
 

 McGaw was an undercover man, so called, acting as a prohibition agent of the state prohibition department. He was an investigator and gatherer of facts concerning violations of the prohibition laws. His immediate superior officer was located in Columbus, where reports of law violations were received from various points of the state through many different agencies, and pursuant to this information the undercover men were sent to investigate and report. The arrests were usually made by the sheriff of the county in which the violations were found to exist. The undercover men did not manifest to the public their official character when first securing friendly contacts with the law violators, but they promptly reported to headquarters the facts
 
 *198
 
 found, and made arrangements with the sheriff to make arrests in due season.
 

 McGaw was sent to Mansfield to investigate a report of violations of the prohibition laws in that city. He was a stranger in Mansfield, and knew none of the alleged violators there. McGaw was told by his superior officer that a certain restaurant in Mansfield, operated by one Frank Peleggi, should be investigated, and that Peleggi’s restaurant was a dangerous place, and that Peleggi was a dangerous man.
 

 McGaw soon became convinced that the prohibition laws were being violated by the unlawful sales of intoxicating liquor at the Peleggi restaurant. He went to the restaurant and purchased a bottle of whisky and carried it away with him. This he delivered to the sheriff of that county, and arranged with the sheriff and his deputies to make the arrest after he had made a second purchase of liquor the following day. The next day McGaw returned to the restaurant, where he again met Peleggi. He asked for another bottle of whisky, and Peleggi at that time refused to sell him a pint, or even a half pint of liquor, but offered to sell him a drink, which offer McGaw accepted. When the drink was poured out by Peleggi, McGaw remarked that the quantity was too small for a drink, and asked Peleggi to double the amount, which he did, whereupon Mc-Gaw paid for the liquor, picked it up, and started to back away toward the door through which he had entered the restaurant. Peleggi immediately and vigorously demanded that McGaw should drink the liquor in the restaurant, and that he should not carry it outside the restaurant. While making these de
 
 *199
 
 mands, Peleggi was coming out from behind the bar, and was approaching McGaw in an angry manner and with the evident intent and purpose of doing whatever was necessary to prevent McGaw from carrying the liquor out of the restaurant.
 

 McGaw testified that, as soon as he had secured the double drink and paid for the same, he disclosed that he was an officer, and exhibited his badge as such, and that, as Peleggi came from behind the bar and approached him, McGaw drew his revolver and warned Peleggi to stand back and not come nearer to him, saying that, if Peleggi did come any nearer, he would shoot. Peleggi continued to approach, and when he was very near McGaw shot him in the chest, inflicting a very serious, but not a fatal, wound.
 

 Peleggi testified for the state at the trial of Mc-Gaw, denying many of the statements made by Mc-Gaw. McGaw testified in his own behalf and urged as a complete defense that he acted in self-defense, saying that he fully believed that he was in great danger of suffering most serious personal injury at the hands of Peleggi, and that his only means of escaping such injury was by shooting Peleggi. He insisted that he had good and reasonable grounds for such belief, and that he had been told by three different persons, one of them being his superior officer, who had assigned him to make the investigations at Mansfield, that Peleggi’s restaurant was a dangerous place for a prohibition officer to visit, and that Peleggi himself was a dangerous person.
 

 McGaw called his immediate superior officer and two other prohibition agents located at Mansfield, and sought to have them tell as witnesses on the
 
 *200
 
 stand what they had told McGaw about the dangerous character of Peleggi’s restaurant and the dangerous character of Peleggi himself. This evidence was all excluded by the trial court and exceptions saved.
 

 It seems from the record that the trial court, and counsel for the state as well, were of the opinion that the only testimony which was competent upon the subject of self-defense was evidence that tended to establish the general reputation of the place, and of Peleggi himself, as being dangerous, and the further fact that McGaw knew of this general reputation before he went there. True, this is perhaps the general method pursued in establishing a general reputation, either good or bad. McGaw’s superior officer did not reside in Mansfield, and did not know of his own personal knowledge what people in general who lived in the neighborhood of Peleggi’s residence or of his place of business commonly said as to his being a dangerous character. Many reports had come to the headquarters in Columbus concerning the situation in Mansfield, and McGaw’s superior officer no doubt thought it was his duty to inform his subordinate officer as fully as possible of the conditions he was going into. It surely will not do to say that McGaw had no right to place any confidence in information coming to him in good faith from his superior officers. This testimony so excluded was of high value to McGaw. It would have strongly corroborated McGaw’s own testimony on the same subject. Without such corroboration the jury might have discredited McGaw on the ground that he had furnished no corroboration of a story that any accused person might easily fabricate to support a claim of self-defense.
 

 
 *201
 
 The exclusion of this evidence was error, and extremely prejudicial to the accused, and standing alone would necessitate a reversal of the judgment entered by the trial court in this case.
 

 The following from the charge of the court: “I might also here say — that the fact that one is a police officer or an enforcement officer gives him no greater right than an ordinary person to shoot or use excessive force under a claimed right of self-defense” — is assigned as error. The remainder of the charge is not objected to, and appears to state the law as fully and as favorably to the accused as he had any reason to expect. It is quite self-evident from facts shown by the record, which are not in dispute, that McGaw was not in the Peleggi restaurant simply and only as an individual patron or customer. He was a duly appointed public officer, and was engaged in the discharge of his official duty. He made a purchase and paid for what he bought, and the seller had no right to assault him or to take that which he had purchased away from him.
 

 There is no room for doubt as to what the law of Ohio is pertaining to the subject of self-defense. It was very clearly and definitely stated in the case of
 
 Marts
 
 v.
 
 State,
 
 26 Ohio St., 162. The first and second paragraphs of the syllabus in that ease read as follows:
 

 “1.
 
 On the trial of an indictment for'murder, the prisoner may, for the purpose of showing that the homicide was justifiable on the ground of self-defense, prove that the deceased was a person of violent, vicious, and dangerous character, and that that character was known to the prisoner at the time of the rencontre between them.
 

 
 *202
 
 “2. Homicide is justifiable on tbe ground of self-defense, where the slayer, in the careful and proper use of his faculties,
 
 bona fide believes,
 
 and has reasonable ground to believe, that he is in imminent danger of death or great bodily harm, and that his only means of escape from such danger will be by taking the life of his assailant, although in
 
 fact
 
 he is mistaken as to the existence or imminence of the danger.”
 

 This case has been approved and followed in eight decisions of this court; that is to say,
 
 Darling
 
 v.
 
 Williams, Admr.,
 
 35 Ohio St., 58;
 
 Upthegrove
 
 v.
 
 State,
 
 37 Ohio St., 662;
 
 State
 
 v.
 
 Peacock,
 
 40 Ohio St., 333;
 
 State
 
 v.
 
 Roderick,
 
 77 Ohio St., 301, 82 N. E., 1082, 14 L. R. A. (N. S.), 704;
 
 Napier
 
 v.
 
 State,
 
 90 Ohio St., 276, 107 N. E., 535;
 
 State
 
 v.
 
 Champion,
 
 109 Ohio St., 281, 142 N. E., 141;
 
 Marcoguiseppe
 
 v.
 
 State,
 
 114 Ohio St., 299, 151 N. E., 182;
 
 State
 
 v.
 
 Sheets,
 
 115 Ohio St., 308, 152 N. E., 664.
 

 We see no occasion to modify the law as announced in these decisions.
 

 Judgment reversed.
 

 Marshall, O. J., Jones, Day, Allen and Robinson, JJ., concur.
 

 Matthias, J., not participating.