The STATE of Ohio, Appellee,

v.

BAKER, Appellant.

[Cite as *State v. Baker* (1993), 88 Ohio App.3d 204.]

Court of Appeals of Ohio,
Lorain County.

No. 92CA005413.

Decided June 9, 1993.

206

Gregory A. White, Lorain County Prosecuting Attorney, for appellee.
Daniel Wightman and Kreig J. Brusnahan, for appellant.

Quillin, Presiding Judge.

, Appellant, Jeremy M. Baker, appeals from his conviction of involuntary manslaughter. We reverse and remand.

On June 11, 1991, David Woods went to 237 Brace Avenue and purchased what he thought was crack cocaine from Troy Wright and Elliot Shelton. Upon realizing the cocaine was fake, Woods returned to the area to talk to Wright. Lisa Nelson, a resident of 237 Brace Avenue, told Woods and Wright to leave her yard. Appellant, who had been standing in the doorway to the house, walked over to Woods and Wright and also told them to leave. According to defense witnesses, Woods was drunk, on drugs, and very angry. An argument ensued, and there was testimony that Woods pulled a razor out of his pocket. Appellant struck Woods in the jaw causing Woods to fall and hit his head on the ground. Ten days later, Woods died from the wound to the back of his head. Appellant testified that he struck Woods in self-defense.

Appellant was convicted of involuntary manslaughter. He appeals and raises five assignments of error.

## Assignment of Error I

"The Trial Court erred to the prejudice of Defendant–Appellant by refusing to permit the introduction of evidence of the violent character of the decedent, of his reputation for violence and of a specific instance of violence which occurred one week prior to the within incident, where the issue was raised as to which man involved in the altercation was the aggressor, where Defendant–Appellant was aware of the decedent's character and reputation for violence and the specific prior instance of violence on the day of the alleged offense and where the Trial Court imposed the burden of establishing self-defense upon the Defendant–Appellant thereby depriving Defendant–Appellant of his right to due process guaranteed by Article I, Sections 10 and 16 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution."

Appellant asserts that the trial court erred in excluding evidence tending to his proof of self-defense. Specifically, appellant contests the court's exclusion of the testimony of George Colvin and Troy Wright, as well as appellant's own testimony concerning both the deceased's reputation for violence and the specific details of a prior attack by the deceased on George Colvin.

In order to prove self-defense a defendant must establish (1) that he was not at fault in creating the situation giving rise to the affray; (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm; and (3) that his only means of escape from such danger was in the use of such force. *State v. Robbins* (1979), 58 Ohio St.2d 74, 80, 12 O.O.3d 84, 87, 388 N.E.2d

755, 758. Crucial to this defense is the defendant's state of mind. *State v. Koss* (1990), 49 Ohio St.3d 213, 215, 551 N.E.2d 970, 972.

Whether evidence concerning the victim is admissible to prove self-defense depends upon the type of evidence being offered. Typically, such evidence falls into two general categories: (1) testimony concerning the victim offered to demonstrate the defendant's state of mind at the time of the incident, and (2) testimony about the victim's character offered to prove that the victim was more likely the aggressor.

Courts have consistently held that a defendant arguing self-defense may testify about his knowledge of specific instances of the victim's prior conduct in order to establish the defendant's state of mind at the time of the incident. See, *e.g.*, *State v. Carlson* (1986), 31 Ohio App.3d 72, 73, 31 OBR 112, 113, 508 N.E.2d 999, 1000; *Cleveland v. Hill* (1989), 63 Ohio App.3d 194, 198, 578 N.E.2d 509, 511. It is also clear that a defendant may testify as to his knowledge of the deceased's reputation for violence. See *McGaw v. State* (1931), 123 Ohio St. 196, 200, 174 N.E. 741, 742; *State v. Smith* (1983), 10 Ohio App.3d 99, 100, 10 OBR 122, 124, 460 N.E.2d 693, 695.

The Supreme Court of Ohio has also held that corroborating evidence as to the defendant's state of mind is admissible to prove self-defense. *McGaw, supra*, 123 Ohio St. at 200, 174 N.E. at 742. Thus, in *McGaw*, defense witnesses' testimony that they had informed the defendant of the dangerous character of the victim was admissible because it "strongly corroborated [the defendant's] own testimony on the same subject." The court reasoned:

" * * * Without such corroboration the jury might have discredited [the defendant] on the ground that he had furnished no corroboration of a story that any accused person might easily fabricate to support a claim of self-defense." *Id.* at 200, 174 N.E. at 743.

Several courts, however, have excluded corroborating evidence as cumulative. In *Cleveland v. Hill, supra*, hospital records showing that the defendant required medical care after the victim had thrown a glass at him were excluded as cumulative because the victim admitted she had thrown the glass. Under the same reasoning, corroborating evidence which included a domestic violence report, a divorce complaint, an affidavit filed by the decedent's wife, and advice given defendant by her mother was likewise excluded in *State v. Spinks* (1992), 79 Ohio App.3d 720, 730, 607 N.E.2d 1130, 1137.

Disagreement also exists among Ohio courts as to the admissibility of evidence falling in the second category, *i.e.*, evidence of the victim's character offered to demonstrate that the victim was more likely the aggressor. In *Marts v. State* (1875), 26 Ohio St. 162, the Ohio Supreme Court stated that the dangerous

character of the deceased could only be admissible in connection with proof that the character was known to the defendant. In *State v. Schmidt* (1979), 65 Ohio App.2d 239, 243, 19 O.O.3d 201, 203, 417 N.E.2d 1264, 1268, however, proof of the deceased's character to show that he was the aggressor was "admissible, regardless of the extent of the accused's knowledge of such character or of the particular evidence in question."

 Evid.R. 404 specifically addresses the admissibility of character evidence about the victim. It provides, in relevant part:

"(A) Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:

" * * *

"(2) Character of Victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, * * * is admissible * * *."

Thus, under Ohio's Rules of Evidence, evidence of a pertinent character trait is admissible to prove that the victim acted in conformity therewith on a particular occasion. See 1 Graham, Modern State and Federal Evidence (1989) 523.

" * * * It is now generally the rule that the accused may show a pertinent trait of the character of the alleged victim that bears on the question of whether or not the victim committed a particular act on a particular occasion in conformity with that trait of character. For this purpose, it is immaterial whether the defendant knew of that character trait before the time of the commission of the alleged crime." 1A Wigmore, Evidence (Tillers Rev.1983) 1350, Section 63.

 Given that such evidence is admissible, Evid.R. 405 provides the permissible methods of proving character:

"Reputation or Opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion.

"Specific Instances of Conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."

Thus, character may generally be proven by means of reputation and opinion testimony. However, only where character constitutes an element of a charge, claim, or defense may it be proven by means of specific acts of conduct.

Recent Ohio decisions have followed the distinction set forth in Evid.R. 405 between reputation and specific acts testimony. In *State v. Carlson, supra,* for

instance, defense witnesses were permitted to testify as to the victim's reputation for violence. *Id.*, 31 Ohio App.3d at 74, 31 OBR at 114, 508 N.E.2d at 1001. The *Carlson* court refused, however, to admit evidence of specific acts of the victim's conduct, reasoning that the victim's character is not an essential element of self-defense. See, also, *State v. Smith, supra,* 10 Ohio App.3d at 101, 10 OBR at 125, 460 N.E.2d at 696; *State v. Spinks, supra;* Modern State and Federal Evidence, *supra,* at 532.

■ Turning to the instant case, we will first address appellant's argument that the court erroneously precluded him from testifying as to the reputation of the victim. At trial, the following exchange took place:

"Q. Now, do you know David Woods?

"A. [Defendant] Yes, I do.

"Q. Did you know him before June 11th of 1991?

"A. Yes, sir.

"Q. Do you know if he had a reputation for being a violent person?

"MS. LILLY: Objection, Your Honor.

"THE COURT: Sustained.

"THE WITNESS: I grew up with—

"THE COURT: Mr. Baker, you can't answer that question."

Clearly, the defendant's testimony as to his own knowledge of the victim's reputation for violence was admissible to prove his state of mind at the time of the incident. Thus, the trial court erred in excluding that testimony.

Appellant also challenges the court's exclusion of the testimony of George Colvin, the victim's nephew-in-law, which would have discussed the following: that the victim attacked Colvin with a razor one week prior to this incident; that the victim became violent when drinking alcohol; that he had a reputation for violence and that he was known to carry a razor on his person. Appellant also argues that the court erred in excluding Troy Wright's testimony as to the victim's reputation for violence.

■ Under Evid.R. 404 and 405, Wright's and Colvin's testimony as to the victim's reputation was admissible to show that the victim was more likely to have been the aggressor. See, *Carlson, supra,* 31 Ohio App.3d at 73, 31 OBR at 113, 508 N.E.2d at 1000. Thus, the trial court erred in excluding their testimony concerning the victim's reputation for violence.

■ As for the specific razor incident about which Colvin was to testify, such evidence constituted a specific act of conduct offered to demonstrate the victim's

violent character. Because the victim's character is not an element of self-defense, this evidence was properly excluded. See *id.* at 74, 31 OBR at 114, 508 N.E.2d at 1001.

■ Appellant correctly argues, however, that he should have been permitted to testify as to his own knowledge of the razor incident. Specifically, the trial court did not allow appellant to testify as to the particulars of the incident, such as the type of weapon used. This testimony was admissible to show appellant's state of mind at the time of the incident and was improperly excluded. See *Cleveland v. Hill, supra,* 63 Ohio App.3d at 198, 578 N.E.2d at 511.

We conclude, therefore, that the trial court erred in excluding the testimony concerning self-defense as indicated above. The assignment of error is sustained.

### Assignments of Error II

"The trial court erred to the prejudice of Defendant–Appellant by excluding all scientific evidence relating to the decedent's drug and alcohol usage on the day of the offense alleged in the indictment."

Appellant's second assignment of error concerns the trial court's exclusion of scientific evidence of the deceased's use of alcohol and cocaine on the day of the incident. Specifically, the trial court excluded medical records and the testimony of Dr. Challener, a coroner for the Cuyahoga County Coroner's Office.

Evid.R. 702 provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The trial court ruled that the evidence concerning the decedent's blood-alcohol level was inadmissible under the following reasoning:

" * * * Certainly, your lay witnesses can testify that they saw the victim drinking, that may be admissible as to your self-defense claim, they can testify to their observations.

"But I don't think that this witness can give us any information relative to the issue here."

■ As we discussed in Assignment of Error I, appellant was improperly precluded from presenting witnesses to testify that the deceased had a reputation for violence while he was under the influence of alcohol. Given that such evidence should have been admitted, it follows that whether the deceased was in fact under the influence of alcohol at the time of the incident was important to the issue of self-defense, relevant specifically to the issue of who was more likely the

aggressor in the incident. Consequently, the trial court erred in excluding the evidence as to decedent's blood-alcohol level.

The trial court excluded the evidence concerning the decedent's use of cocaine on the basis that it was not probative or relevant to an issue in the case. If allowed, the coroner would have testified that the decedent had used cocaine on the day of the incident; that while not typical, cocaine use may cause dysphoria or bad feelings; and that cocaine affects an individual's judgment. We believe this testimony was relevant to the issue of who was the aggressor and that the trial court erred in excluding it.

The second assignment of error is sustained.

### Assignment of Error III

"The Trial Court erred to the prejudice of Defendant–Appellant by permitting the introduction of autopsy photographs which were highly inflammatory and prejudicial and which were merely duplicative of drawings and testimony also presented."

The state introduced into evidence eight autopsy photographs to demonstrate the wounds to the decedent's head and the decedent's cause of death. Appellant contends that two of these photographs were highly inflammatory, prejudicial and duplicative.

Under Evid.R. 403(A), the admission of potentially prejudicial exhibits is to be determined under a balancing test: the probative value of the evidence must be weighed against the danger of unfair prejudice. If the danger of prejudice substantially outweighs the probative value of the evidence, the evidence is not admissible. *State v. Morales* (1987), 32 Ohio St.3d 252, 257, 513 N.E.2d 267, 273. Further, the admission or exclusion of photographic evidence is to be left to the discretion of the trial court. *Id.*

At issue here are two autopsy photographs of the deceased's skull. One photo was of the inside of the skull and revealed a fracture in the back of the skull. The other depicted a view of the head with the scalp incised and pulled back, and the skull removed to show bruising on the underside of the scalp. These photographs demonstrated the deceased's wounds and therefore helped to illustrate for the jury the cause of his death. We believe that the photographs had probative value and were not cumulative and that their admission was not an abuse of the trial court's discretion. The third assignment of error is overruled.

### Assignment of Error IV

"The Trial Court erred to the prejudice of Defendant–Appellant in the instructions relating to Involuntary Manslaughter for the reason that the Court permit-

ted the jury to consider both Felonious Assault and Aggravated Assault as possible felonies the commission of which proximately resulted in the death of the decedent where the evidence adduced at trial did not support a finding of Aggravated Assault."

■ Appellant next contests the trial court's instruction to the jury on aggravated assault, arguing that it was error for the court to instruct on both felonious and aggravated assault as underlying felonies.

R.C. 2903.04 sets forth the crime of involuntary manslaughter. It provides in part:

"(A) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony."

Here, the prosecution's case against appellant for involuntary manslaughter was based upon the underlying felony of felonious assault. The prosecution, however, also requested an instruction on aggravated assault because it believed the defense presented evidence of provocation.

The elements of felonious and aggravated assault are as follows:

R.C. 2903.11 Felonious assault.

"(A) No person shall knowingly:

"(1) Cause serious physical harm to another;

" * * *

"(B) Whoever violates this section is guilty of felonious assault, an aggravated felony of the second degree. * * *"

R.C. 2903.12 Aggravated assault.

"(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

"(1) Cause serious physical harm to another;

" * * *

"(B) Whoever violates this section is guilty of aggravated assault, a felony of the fourth degree. * * *"

Thus, the only difference between the two is the additional mitigating factor of serious provocation which reduces felonious assault to aggravated assault.

Appellant argues that the jury may have determined his guilt based upon a finding that he committed aggravated assault but not felonious assault. Such a verdict, appellant contends, is erroneous because there was no evidence present-

ed of provocation. Even assuming, however, that there was insufficient evidence of provocation to warrant an aggravated assault instruction, the evidence would still meet the elements of felonious assault. Thus, appellant has not persuaded us that he was harmed by the instruction on aggravated assault. The fourth assignment of error is overruled.

### Assignment of Error V

"The evidence presented by the State of Ohio at the trial of the within matter was insufficient as a matter of law to sustain a conviction against the Appellant and the verdict was against the manifest weight of the evidence."

Appellant argues both that there was insufficient evidence to support his conviction and that the conviction was against the manifest weight of the evidence.

Where a conviction is not supported by sufficient evidence, the defendant is entitled to a judgment of acquittal. See *Tibbs v. Florida* (1982), 457 U.S. 31, 41–42, 102 S.Ct. 2211, 2217–2218, 72 L.Ed.2d 652, 660–661; Crim.R. 29. In determining whether there was sufficient evidence, an appellate court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.

" * * * The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

Here, the state presented considerable evidence which if believed would lead a reasonable trier of fact to find all the elements of involuntary manslaughter to be proven beyond a reasonable doubt. The evidence showed that the decedent died as a result of brain injuries which were caused when he fell after being struck in the jaw. Further, appellant admitted that he struck the decedent in the jaw and that his purpose in doing so was self-defense. This evidence was clearly sufficient to prove the elements of involuntary manslaughter.

We need not address appellant's claim that the conviction was against the manifest weight of the evidence because our decision in assignments of error one and two, and the resulting remand for a new trial have rendered this issue moot. The fifth assignment of error is overruled.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded to the trial court for a new trial.

*Judgment accordingly.*

REECE and DICKINSON, JJ., concur.