DECISION
This is an appeal by defendant, John Victor Busby, from a judgment of the Franklin County Court of Common Pleas, following a jury trial in which defendant was found guilty of murder.
On October 8, 1997, defendant was indicted on one count of murder in violation of R.C. 2903.02. The indictment arose out of the death of David McDonald on September 29, 1997. The matter was tried before a jury beginning on June 15, 1998. It is undisputed that defendant stabbed David McDonald on September 29, 1997, at defendant's residence. The primary issue at trial was whether defendant acted in self-defense.
The victim, David McDonald, was married to Annie McDonald. The facts as developed at trial indicated that defendant and Annie McDonald had engaged in a personal relationship for approximately two years prior to the stabbing incident. Annie McDonald would periodically visit defendant at his apartment. The defendant testified at trial that David McDonald had made threatening remarks to him shortly before the incident.
On the date of the stabbing, Annie McDonald was visiting the defendant at his upstairs apartment, located at 804 1/2 St. Clair Avenue. Dorothy Dailey resides in a first floor apartment directly below the defendant's residence. During the early evening hours of September 29, 1997, a group of people gathered at Dailey's apartment; they were drinking beer and socializing. The visitors to Dailey's apartment included Lamonte McDougald, Tina Dailey, Kevin Copper, Jessie Chaney, Randall Reeves and Charles Whiting. McDougald, Chaney and Reeves testified at trial on behalf of the state, while Copper testified on behalf of the defendant.
That evening, David McDonald drove a Buick to the apartment complex where defendant resides. McDonald walked up to the individuals congregated at Dailey's apartment and inquired whether anyone knew if a lady was in defendant's upstairs apartment. Lamonte McDougald indicated that the defendant and a lady were upstairs, and McDonald eventually walked up the steps leading to defendant's apartment and knocked on defendant's door. One witness testified hearing the door shut, and some of the witnesses testified that they subsequently heard sounds indicating a scuffle. The state's witnesses gave various estimates as to how long McDonald was upstairs in defendant's apartment, ranging from a few minutes, or five or six minutes, to as long as ten or fifteen minutes. One of defendant's witnesses, Kevin Copper, estimated that McDonald was upstairs maybe thirty or forty minutes.
McDonald eventually came staggering downstairs and, before reaching the last step, collapsed and fell to the ground. The guests at Dorothy Dailey's apartment attempted to assist the victim. A pillow was placed under his head and Dorothy Dailey called 911, but the victim died a short time later. The cause of death was a stab wound to the chest.
Lamonte McDougald testified that, after the victim fell at the bottom of the stairs, the defendant came down the steps and stated, "I hope the mother fucker dies." (Tr. 70.) Randall Reeves testified that, after the stabbing, the defendant stated that the victim had been "disrespecting my house." (Tr. 120.) The defendant also made a comment to the effect that, "I should have finished the job." (Tr. 120.) Jessie Chaney testified that, after defendant came downstairs following the stabbing, he stated, "Mother fucker, that's what you get, I hope you die." (Tr. 178-179.) Annie McDonald came downstairs shortly after the incident and left the scene after making a phone call.
One of the first police officers to arrive after the incident knocked on defendant's apartment door, but nobody responded. The officer opened the door and observed the defendant in the apartment. The officer observed a broken vase on the floor, along with broken glass, and it was apparent to him that "some kind of struggle or altercation took place." (Tr. 36.) The officer asked the defendant if he knew the victim and the defendant stated "no." (Tr. 36.) The defendant denied that the victim had been in the apartment. The officer did not notice any injuries to the defendant. The defendant was taken into custody that evening.
Dr. Keith Norton, a deputy coroner and forensic pathologist with the Franklin County Coroner's office, performed an autopsy on the victim, David McDonald. The victim had a large abrasion on the right upper forehead, consistent with falling from stairs and hitting an object on the ground. The victim suffered a stab wound to the right upper chest. The wound was 2 1/16 inches deep and inch long. The wound caused damage to the right lung and aorta. Dr. Norton opined that the cause of death was "the stab wound to the chest which hit the aorta and caused more than two quarts of blood to land in the right side of the chest." (Tr. 240.)
Crime scene photographs taken shortly after the incident included a picture showing a ratchet tool beside the victim's hand. Although various knives were found in the defendant's apartment, police officers were unable to locate the weapon used in the stabbing.
Columbus Police Detective Ronald Jester was the lead detective assigned to investigate the incident. Detective Jester interviewed the defendant as part of his investigation, and a tape of the interview was played at trial for the jury. During the interview, the defendant complained about an injury, stating that he had been struck on the head. The detective put his hand on the defendant's head but did not feel anything out of the ordinary. The defendant told Detective Jester that the victim had threatened him previously. At the time of the interview, the defendant denied stabbing the victim.
The defendant testified on his own behalf at trial. The defendant, who works as a mechanic, had known the victim for "a couple of years" prior to the incident. (Tr. 423.) The defendant had known the victim's wife, Annie McDonald, for about five or seven years and, as previously noted, for the past two years the defendant was involved in a personal relationship with her.
The defendant gave the following account of the stabbing. On the evening of the incident, Annie McDonald visited the defendant at his apartment. Later that evening, David McDonald knocked on the door of the apartment. The defendant testified that he opened the door and McDonald "like pushed me in." (Tr. 431.) McDonald stated, "[w]here's my damn wife?" (Tr. 431.) The defendant pushed McDonald back out to the steps. The defendant testified that "I was coming back in the house, he hit me in the head with something, I don't know what it was." (Tr. 431.) The defendant fell toward a kitchen table. He grabbed at the first thing he could find, which happened to be a knife on the table, and then turned and stabbed McDonald. The defendant testified that he went out on the steps and said, "[d]on't come back here fuck'in with me no more." (Tr. 439.)
The defendant testified that after the victim hit him in the back of the head, he was in fear that McDonald was going to kill him. According to the defendant's testimony, he put the knife in the kitchen sink after the incident. On cross-examination, defendant stated that at no time did he see a weapon in McDonald's hands.
After the stabbing, the defendant went to the back bedroom and told Annie McDonald that "her husband was hurt." (Tr. 436.) The defendant stated that Annie McDonald had not been aware of any scuffle because "[i]t was no bunch of noise or nothing." (Tr. 466.) According to the defendant, Annie McDonald panicked and went out a window onto the roof of the apartment. The defendant eventually persuaded her to come back inside.
The defendant testified that he then "walked her down the steps. I walked her down the steps here past * * * [the victim], and I guess she was going to get help. I walked back up the steps." (Tr. 439.) The defendant went up to his apartment and sat down.
The defendant testified that David McDonald had previously threatened him. One incident took place about three weeks before the stabbing when McDonald came to the defendant's apartment, "pointed his finger at my face and said that, `I want you to stop messing with her or I'm gonna kill you.'" (Tr. 443.)
The defendant related that McDonald also made threats to defendant during an incident on Fifth Avenue as the defendant was walking with Annie McDonald. David McDonald drove up, stopped his vehicle in the middle of the street, and began arguing with his wife. When Annie McDonald started walking away, David McDonald told the defendant he wanted to talk to him. McDonald "was saying something he was gonna hurt me." (Tr. 445.) This incident occurred about one week after the first threat.
On one other occasion, the defendant was working on a car with Annie McDonald's brother, Gary Lindsey, when David McDonald "came out there and he got talking about people messing around with his wife * * *. And then he said something like, `[i]f I would catch somebody like that I would kill both of them.'" (Tr. 446.) The defendant also related that, approximately two weeks before the incident, Annie McDonald came over to his apartment and defendant noticed that her jaw was "swollen up." (Tr. 453.)
Annie McDonald testified at trial on behalf of the defendant. Annie McDonald and David McDonald had been married for thirty-two years, and the couple had seven children. McDonald and her husband, who was a minister, separated in August of 1997; Annie McDonald moved in with her mother at that time.
Annie McDonald testified that, on the night of the incident, she and the defendant were in the back bedroom of the defendant's apartment at the time her husband knocked on the door. The defendant went to the door while McDonald remained in the bedroom. A short time later, defendant came back to the bedroom and said, "Dave hit me on the head." (Tr. 559.) Regarding the stabbing incident, Annie McDonald denied seeing anything or even hearing her husband at the defendant's apartment that night. She was taken to the police station on the date of the incident, but she declined to give a statement to police.
On June 23, 1998, the jury returned a verdict finding defendant guilty of murder. By judgment entry filed June 25, 1998, the trial court sentenced defendant to a term of incarceration of fifteen years to life.
On July 6, 1998, defendant filed a motion for judgment of acquittal or, in the alternative, for a new trial. The state filed a memorandum contra defendant's motion. By decision and entry filed August 7, 1998, the trial court denied defendant's motion.
On appeal, defendant sets forth the following three assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED WHEN IT REFUSED TO ALLOW ANY TESTIMONY, PURSUANT TO EVIDENTIARY RULES 404 AND 405, RELATING TO THE VICTIM'S REPUTATION FOR VIOLENCE.
SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL AS THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR MURDER UNDER R.C. 2903.02.
THIRD ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED BY NOT SUSTAINING DEFENSE COUNSEL'S OBJECTION DURING CLOSING ARGUMENT TO PROSECUTORIAL MISCONDUCT AND INSTRUCTING THE JURY AS TO SUCH.
Under the first assignment of error, defendant contends that the trial court erred in failing to allow defendant to present evidence, pursuant to Evid.R. 404 and 405, relating to the victim's reputation for violence, as well as specific acts of violence committed by the victim.
In general, "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion," subject to certain enumerated exceptions. Evid.R. 404(A). One of the exceptions is set forth in Evid.R. 404(A)(2), which states:
 (2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.
Evid.R. 405 provides for methods of proving character and states as follows:
 (A) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 (B) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.
In State v. Williamson (Sept. 12, 1996), Ross App. No. 95CA2155, unreported, a case involving a self-defense claim, the court discussed the relationship between Evid.R. 404(A)(2) and 405 in the context of such a defense, stating:
 * * * Under Evid.R. 404, evidence of a trait of an individual's character is not generally admissible for the purpose of proving that he acted in conformity with it. However, Evid.R. 404(A)(2) creates an exception for evidence concerning the character of a victim of the crime if offered by an accused, or by the prosecution to rebut evidence offered by the defense. While Evid.R. 404 provides that such evidence is admissible, Evid.R. 405 limits the permissible methods of proving character. Character may generally be proven by means of reputation and opinion testimony. However, only where character constitutes an element of a charge, claim or defense, may it be proven by means of specific acts of conduct. See Evid.R. 405(B). Thus, whether evidence concerning the victim is admissible to prove self-defense depends upon the type of evidence being offered.
 Typically, such evidence falls into two general categories: (1) testimony concerning the victim and offered to demonstrate defendant's state of mind at the time of the incident, and (2) testimony about the victim's character offered to prove that the victim was more likely the aggressor. For the first purpose, the critical issue is what the defendant knew about the alleged victim at the time of the confrontation. For that purpose, a defendant is permitted to testify about specific incidents of the alleged victim's violent behavior if the defendant was aware of them at the time of the confrontation. The defendant is also permitted to testify about what he knew concerning the victim's reputation for violence at the time of the confrontation. For the second purpose, i.e., victim the aggressor, the critical issue is the alleged victim's character. In this regard, witnesses other than the defendant may testify about the victim's reputation for violent behavior. However, witnesses other than the defendant may not testify regarding specific incidents of the victim's violent behavior unless the character or trait is "an essential element of the charge, claim or defense." See Evid.R. 405(B). An alleged victim's purported violent nature is not an essential element of self-defense and therefore, witnesses other than the defendant have no admissible basis for testifying to specific instances of violent conduct. See Evid.R. 405(B); State v. Cuttiford (1994), 93 Ohio App.3d 546, 555, 639 N.E.2d 472; State v. Baker (1993), 88 Ohio App.3d 204, 209-210, 623 N.E.2d 672. * * *
Defendant argues that the trial court erred in refusing to admit testimony pertaining to acts of violence committed by the victim against Annie McDonald and her children where defendant had knowledge of such acts. The record indicates that defense counsel asked defendant at trial whether he was aware of any confrontation between the decedent and Annie McDonald approximately two weeks prior to the stabbing incident. Defendant was permitted to testify that he had observed that Annie McDonald's "jaw was swollen up." (Tr. 453.) However, the trial court sustained the prosecution's objection to defense counsel's question concerning whether defendant became aware of what happened to her jaw. The prosecution objected on the basis of hearsay, and the trial court, in sustaining the objection, instructed the defendant, "[y]ou cannot testify as to what she told you, sir." (Tr. 453.) The trial court also appears to have viewed such evidence as not relevant to defendant's state of mind, as the court noted to counsel that "that incident * * * had nothing to do with the defendant, wasn't even around." (Tr. 534.)
We agree with defendant's contention that he should have been allowed to testify as to his own knowledge of this incident. Such evidence was relevant to show defendant's state of mind at the time of the incident. See State v. Baker (1993), 88 Ohio App.3d 204,211. In State v. Smith (1983), 10 Ohio App.3d 99,101, this court held that a defendant's "knowledge through hearsay that the deceased had committed an unprovoked act of violence upon another" was relevant to defendant's belief that he was in imminent danger of death or bodily harm, and thus is admissible to prove state of mind.
Defendant further contends that the trial court erred in limiting the testimony of Annie McDonald regarding the incident noted above, as well as other incidents of violence by the decedent. The defendant proffered that Annie McDonald would have testified that the decedent struck McDonald in the jaw, knocking out her false tooth. It was proffered that McDonald told the defendant about this altercation with the decedent on or shortly after the date of the incident. It was also proffered that McDonald "would also have testified as to numerous other incidents of turbulence and violence that was committed by the deceased that she informed the accused * * * about prior to September 29, 1997."
To the extent that defendant sought to have Annie McDonald, as well as another witness, Mildred Lindsey, testify as to a specific incident which purportedly occurred on September 16, 1997, in which the victim struck her in the jaw, the trial court did not err in precluding this testimony. Because the victim's character is not an element of self-defense, a specific act of conduct offered to demonstrate the victim's violent character is not admissible. Baker, supra at 210-211.
However, the court should have allowed Annie McDonald to testify that she communicated to the defendant the facts of this incident as relevant to defendant's state of mind. See State v.Marsh (Oct. 20, 1995), Trumbull App. No. 93-T-4855, unreported (trial court erred in ruling that victim's former spouse could not testify as to the fact she communicated facts of prior specific acts of violence to appellant; such communication "is indicative of appellant's state of mind at the time of the incident" involving appellant and victim). See, also, Williamson, supra,
(testimony by witnesses that they communicated their opinions concerning the victim's violence to appellant is admissible in order to show appellant's state of mind at the time of his confrontation with the victim).
As previously noted, defendant also proffered that he would have presented the testimony of Annie McDonald and Mildred Lindsey regarding the victim's alleged reputation for violence. While evidence regarding the character of the victim is generally inadmissible, such evidence may be offered to support an inference that the victim was the first aggressor and that the defendant acted in self-defense. State v. Silva (Feb. 11, 1991), Stark App. No. CA-8047, unreported (under Evid.R. 404(A)(2), evidence of the character of the victim is relevant in a self-defense case and may be introduced to establish that the victim was the first aggressor). See, also, Williamson, supra. The staff notes to Evid.R. 404 indicate that this particular "use of character evidence is as circumstantial evidence which gives rise to an inference which tends to establish conduct on a particular occasion."
Although relevant to the issue of self-defense, evidence of a victim's propensity for violence is not an essential element of defendant's defense, and thus evidence on this issue would be limited to reputation or opinion evidence and could not be shown by specific instances of conduct. Williamson, supra. In the present case, the trial court noted on the record that the proffered testimony from witnesses regarding the victim's reputation for violence would not be admitted "because there was no showing in the record in the underlying facts in the case that the defendant was aware of any propensity for violence on behalf of the victim." (Tr. 737.) However, whether or not this was the case, "[w]here competent evidence of character is offered for the purpose of showing that the deceased victim was the aggressor, such evidence is admissible, regardless of the extent of the accused's knowledge of such character or of the particular evidence in question." State v. Schmidt (1979), 65 Ohio App.2d 239,243, citing 1 Wharton's Criminal Evidence (13 Ed. 1972) 510, Section 236. Thus, we agree with defendant's contention that such testimony was admissible pursuant to Evid.R. 404(A)(2).
We note that the state contends that, even if the trial court erred in failing to admit certain evidence at issue, such error was harmless because the trial court allowed other evidence regarding threats made by the victim. Under the particular facts of this case, we disagree. In the present case, the primary issue for the trier of fact was whether defendant acted in self-defense. Because the trial court limited defendant in presenting evidence relevant to his self-defense claim, especially where defendant's state of mind and the reasonableness of his response to the victim were crucial matters for the jury's determination, we cannot conclude that such error was harmless. Accordingly, we find that the court's errors relating to the evidentiary rulings were prejudicial and we remand for a new trial.
Finally, we note that defendant asserts that the trial court erred in failing to admit certain police records regarding the purported incident on September 16, 1997, in which the victim allegedly struck Annie McDonald in the jaw. We have previously held that defendant should have been permitted to testify regarding his knowledge of this incident. Assuming that the court had allowed defendant's testimony as to this incident, the introduction of corroborative evidence of prior bad acts would presumably be unnecessary as cumulative. See, e.g., Cleveland v.Hill (1989), 63 Ohio App.3d 194, 198 (where victim admitted that she struck defendant with a drinking glass and that defendant required medical attention, trial court did not err in failing to admit hospital records; admission of the records would have been cumulative as they would not have tended to prove anything more than that testified to by defendant and the victim).
Based upon the foregoing, defendant's first assignment of error is sustained.
Under the second assignment of error, defendant asserts that the trial court erred in failing to grant defendant's motion for judgment of acquittal or, in the alternative, new trial. Defendant contends that the evidence was insufficient to sustain a conviction for murder under R.C. 2903.02. More specifically, defendant contends that the evidence in this case supports an acquittal based upon the premise of self-defense.
In general, when reviewing the sufficiency of the evidence to support a criminal conviction, "the evidence must be construed in a light most favorable to the prosecution, and the reviewing court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported (1993 Opinions 5437, 5438). The Ohio Supreme Court has noted that, "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman
(1978), 55 Ohio St.2d 261, syllabus. In ruling on a defendant's motion for judgment of acquittal pursuant to Crim.R. 29, the "trial court is required to construe the evidence most strongly in favor of the state, the party against whom the motion has been directed." State v. Ellis (July 25, 1996), Franklin App. No. 96APA02-188, unreported (1996 Opinions 3077, 3078).
In State v. Hayden (Sept. 16, 1997), Franklin App. No. 95APA05-559, unreported (1997 Opinions 3822, 3826), this court noted that:
 In order to sustain a charge of murder, the state purposely caused the death of another. R.C. 2903.02. A person acts purposely when it is his specific intention to cause a certain result. R.C. 2901.22(A). Purpose, or intent, can be established by circumstantial evidence. State v. Jenks
(1991), 61 Ohio St.3d 259, 272. The intent to kill need not be proved by direct testimony, but may be deduced from the surrounding circumstances, including the means or weapon used, its tendency to destroy life if designed for that purpose, the manner in which the wounds are inflicted, and all other facts and circumstances in evidence. State v. Robinson (1954), 161 Ohio St. 213; State v. Burke
(1995), 73 Ohio St.3d 399; State v. Garner
(1995), 74 Ohio St.3d 49, 60.
In order to justify the use of deadly force on self-defense grounds, a defendant must prove the following by a preponderance of the evidence:
 * * * (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona find belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger. State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus.
Further, under Ohio law, self-defense is an affirmative defense, and the defendant bears the burden of establishing a claim of self-defense by the preponderance of the evidence. State v.Lesley (Feb. 4, 1994), Lucas App. No. L-92-389, unreported, citingState v. Martin (1986), 21 Ohio St.3d 91.
Defendant points to evidence that the victim came to defendant's residence with the intent of finding out whether his wife was there. Defendant argues that the victim had made prior threats to defendant, and that the evidence only indicates that defendant acted in self-defense.
In the present case, the evidence construed most strongly in favor of the state indicates that David McDonald went to the defendant's residence and knocked on the door. While defendant denied letting McDonald inside the residence, there was testimony by one of the state's witnesses, Randall Reeves, that he heard the door close and that a few minutes passed before he heard the sound of a scuffle inside the apartment. The victim subsequently came down the steps and fell to the ground with a knife wound to the chest. The location of the stab wound was to the victim's chest, causing damage to the victim's right lung and aorta. Lamonte McDougald testified that the defendant then came down the steps and said, "I hope the mother fucker dies." (Tr. 70.) Jessie Chaney related that the defendant stated, "Mother fucker, that's what you get, I hope you die." (Tr. 177.) Randall Reeves testified that he passed the defendant on the steps and the defendant made a statement, to the effect, "I should have finished the job." (Tr. 120.)
An accused is presumed to know and intend what he does, and "[a] guilty intent may be established from inferences reasonably drawn by the jury from facts which have been proved beyond a reasonable doubt, including acts and statements of a defendant." State v. Wallen (1969), 21 Ohio App.2d 27, 34. Further, intent may be inferred from all of the surrounding circumstances, "including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound." State v. Robinson (1954),161 Ohio St. 213, paragraph five of the syllabus. Thus, in the present case, defendant's intent "was a question of fact to be inferred from the surrounding circumstances and the state was entitled to all favorable inferences that might be drawn from the facts proved." Smith, supra, at 99. Upon review, we conclude there was evidence presented by which a jury could infer a purpose to kill.
Moreover, while defendant contended that he acted only in self-defense, the jury in this case heard evidence that defendant offered inconsistent statements regarding the events at issue. When police officers arrived at the scene, the defendant denied that he knew David McDonald or that he was in his apartment. He also failed to indicate that McDonald hit him in the back of the head. Later that night, at police headquarters, the defendant again denied stabbing the victim. However, he stated during that interview that the victim attempted to force his way inside the apartment. The defendant further stated that he was able to push the victim out the door but that he did not know how the decedent was stabbed. During this interview, the defendant claimed that he had a lump on his head. The detective put his hand on defendant's head but could not feel anything unusual.
It was up to the jury, as trier of fact, to determine the credibility of the witnesses, and the jury was not required to accept defendant's self-serving statements offered at trial. Thus, while defendant contended that David McDonald immediately confronted him at the door about where his wife was, and defendant testified that he never allowed David McDonald to come inside the apartment, there was testimony that McDonald was in the apartment for at least several minutes. One of defendant's own witnesses, Kevin Copper, estimated that McDonald could have been in the apartment thirty or forty minutes. The jury could have inferred that the defendant allowed David McDonald to enter the house, rather than accept defendant's contention that McDonald aggressively attempted to enter causing defendant to push him outside. None of the state's witnesses heard the victim ask, "where's my damn wife," as related by defendant during his testimony. Lamonte McDougald testified that he heard the defendant say, "[y]ou're gonna quit F'in with me." (Tr. 68.) Given the conflicting evidence, the jury could have concluded that defendant did not reasonably fear that he was in imminent danger of death or great bodily harm.
There was also conflicting testimony as to defendant's actions immediately after the incident. The defendant, who claimed that he had done nothing wrong, testified that he went back upstairs, left the door open, and sat down in a chair to wait for the police to arrive. The state's witnesses testified that the defendant went upstairs and shut the door. One of the first police officers to arrive at the scene testified that he went upstairs and knocked on the defendant's door but did not get a response. The defendant also testified that he put the knife in the sink after the incident. However, a search of the apartment by police officers failed to recover the weapon used in the stabbing.
In cases such as the present, "where reasonable minds can reach different conclusions as to whether the elements of a crime or an affirmative defense to that crime have been proven according to the applicable standard of proof, the determination of these issues is the province of the jury, and the trial court may not enter judgment of acquittal pursuant to Crim.R. 29(A)."State v. Austin (Sept. 12, 1990), Summit App. No. 14483, unreported. Defendant's contention that the trial court erred in not granting his motion for judgment of acquittal or for a new trial is without merit.
Accordingly, defendant's second assignment of error is overruled.
Under the third assignment of error, defendant contends that he was denied his right to a fair trial when the trial court refused to sustain defense counsel's objections to the prosecutor's closing argument. Specifically, defendant notes that the trial court had previously ruled that evidence relating to police runs to the victim's house would not be admitted. However, during closing argument, the prosecutor stated: "There was never these threats that you see to try to get you to speculate that there was some kind of a domestic dispute that had been going on for long time with threats and fights. Like I said, ladies and gentlemen, no police reports." (Tr. 702.)
In light of our reversal on evidentiary grounds, we need not reach the issue raised by defendant that the trial court committed reversible error by failing to sustain defense counsel's objection to the prosecutor's closing statement. We do note, however, as cited by defendant, that the trial court precluded any evidence regarding police runs to defendant's residence. Although the trial court precluded defense counsel from introducing police records reflecting police activity at the victim's residence, the prosecution attempted to capitalize on the absence of such evidence during closing by suggesting that such records did not exist. While we find the issue raised by defendant to be rendered moot based upon our remand for a new trial, we note our concern over the comments made by the prosecution on this issue during closing argument.
Based upon the foregoing, defendant's first assignment of error is sustained, the second assignment of error is overruled and the third assignment of error is rendered moot. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and this matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.
TYACK, J., and LAZARUS, P.J.