[Cite as *State v. Becker*, 2023-Ohio-601.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Andrew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2022 CA 0069 |
| ZACHARY BECKER | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County
Court of Common Pleas, Case No. 2021
CR 11111

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      February 28, 2023

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

KYLE L. STONE                      DONALD GALLICK
Prosecuting Attorney              190 North Union Street, #102
BY: TIMOTHY E. YAHER        Akron, OH 44304
Assistant Prosecutor
110 Central Plaza South, Ste. 510
Canto, OH 44702-1413

*Gwin, P.J.*

{¶1} Defendant-appellant Zachary Becker ["Becker"] appeals his conviction and sentence after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2} At about 8:00 p.m. on May 19, 2021, Becker visited the apartment of the decedent Michael Gates for the purpose of discussing Becker's sale of a handgun to Gates. 2T. at 395-398. Upon his arrival, Becker was met by a neighbor of Gates, Joseph Wakeley, who resided in the basement apartment of the building. 1T. at 207-208; 2T. at 297. Wakeley showed Becker to Gate's apartment on the top floor of the building. 1T. at 214. Gates had two Ring cameras: one on top of his refrigerator in the kitchen, and another outside the apartment facing the door. 1T. at 252-254; State's Exhibit 6. The cameras are motion activated.

{¶3} Becker, the neighbor, and Gates were drinking Hennessy. At some point, the conversation turned to Becker's firearm, a .40 caliber Smith & Wesson handgun which he was carrying in a hip holster. 1T. at 215. Gates was interested in buying the handgun from Becker. Becker removed the clip, and handed Gates the gun. Gates subsequently asked Becker if he could fire the gun to make sure it was operable. 2T. at 398. Becker agreed and the trio proceeded to an area outside by a stairwell. 1T. at 221. Gates fired the handgun 10-11 times. 2T. at 399. The gun jammed two to three times during the demonstration. Id. Wakeley heard Gates ask about buying the gun, but Becker declined to sell this particular gun; however, Wakeley heard Becker say he would find another gun to sell to Gates. 1T. at 216-218.

**{¶4}** Wakeley testified that Becker asked Gates to sell him some methamphetamine. 1T. at 218. Becker offered Gates three or four dollars; however, Gates simply gave Becker some methamphetamine. 1T. at 218-219. Wakeley testified that Becker put the drugs on the couch. 1T. at 219. Becker then asked Gates to "front" him more methamphetamine, for which Becker would pay him at a later date. 1T. at 220-221. Becker showed Gates his driver's license, so Gates would know where Becker lived and could get his money back. 1T. at 220. A picture of Becker's driver's license was found on Gate's cell phone. 1T. at 271; State's Exhibit 7.

**{¶5}** Fearing that the police may come in response to the sound of gunshots, Wakeley returned to his apartment. 1T. at 222.

**{¶6}** Later that evening, Becker tells Gates that he will not sell the handgun to him. 2T. at 402. Approximately five minutes later, Becker claimed that Gates physically attacked him while Becker was sitting on the couch. 2T. at 403. Becker testified that Gates struck him 3 to 4 times in the head. Id. In response, Becker drew his handgun and shot Gates. 2T. at 404. The video from the motion activated Ring camera shows what appears to be Gates swinging at Becker. A gunshot then can be heard. Becker runs to lock the kitchen door, while telling Gates to "stay down" and asking "Where's your shit at?" 1T. at 282; 2T. at 405; 407. Becker can then be seen taking items off the living room table and tossing the couch cushions as if he were looking for something. 1T. at 285-286; 2T. at 407. Becker can be seen jiggling the apartment door handle and pouring liquor over the door handle. 2T. at 407; 416-417.

**{¶7}** Gates's cousin found him dead on the floor later that morning. 1T. at 246-247. She called 9-1-1, and the Canton Police Department responded to the scene. No

weapon was found on the premises; however, marijuana and methamphetamines were recovered from the premises. 1T. at 267- 269.

{¶8}   Becker was arrested at a motel in Richland, Summit County, Ohio. Among the items in his possession, the police found notes that Becker had written. 2T. at 322-323; State's Exhibit 17. Among other things, the notes said,

> He allegedly took your gun.
>
> Harassed you about it all night.
>
> Told you you couldn't leave.
>
> Out of nowhere he attacked you.
>
> Didn't know he was - - or has a felony.
>
> The "Ring good."
>
> * * *
>
> Told you he'd have his cousins come and take it already from you.
>
> He almost had a chance at possibly taking your life.
>
> Never hit or took anything.
>
> And "I was/am terrified that I was goin" [sic.] …be murdered.

2T. at 325-326.   Additionally, in a notebook recovered by the police, Becker had written "I'm afraid the Ring may depict that dude punched me and I shot him."  "Drug deal gone wrong."   2T. at 328.

{¶9}   Becker's girlfriend, who was with him at the Richfield motel, gave officers consent to search their shared home in Doylestown, Ohio. 1T. at 291-293, State's Exhibit 10. Officers found the loaded .40 caliber Smith & Wesson handgun in Becker's oven, with another clip of ammunition. Id. at 294-295.

{¶10} Doctor Andrea McCollom of the Cuyahoga County Medical Examiner's Office performed the autopsy on Gates on May 21, 2021. 2T. at 375. She ruled his death was a homicide, and the cause of death was the gunshot wound. Id. at 386-388. She also performed a toxicology test on Gates and found that his blood alcohol content was .324 grams per deciliter. 2T. at 384.

{¶11} On July 15, 2021, the Stark County Grand Jury indicted Becker with one count of felony murder via felonious assault, in violation of R.C. 2903.02(B)(D); 2929.02(B); felonious assault in violation of R.C. 2903.11(A)(1)/(2)(D)(1); and tampering with evidence in violation of R.C. 2921.12(A)(1)(B). The murder and felonious assault charges each carried a three-year firearm specification pursuant to R.C. 2941.145(A).

{¶12} Becker requested and received a jury instruction on self-defense. The jury found Becker guilty of all charges. The trial judge sentenced Becker to a mandatory prison term of 15 years to life on the charge of Murder, with a consecutive mandatory three-year term on the firearm specification. The trial judge merged the felonious assault with the attendant firearm specification into the murder count. The trial court further sentenced Becker to a term of 36 months for the charge of Tampering with Evidence to be served consecutively to Count One. Becker thus received an aggregate prison term of 21 years to life.

*Assignments of Error*

{¶13} Becker raises two Assignments of Error,

{¶14} "I. THE CONVICTIONS FOR MURDER AND FELONIOUS ASSAULT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE

TESTIMONY AND VIDEO EVIDENCE FAILS TO PROVE APPELLANT WAS NOT ACTING IN SELF-DEFENSE.

{¶15} "II. THE MURDER CONVICTION IS THE RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL, AS PROTECTED BY THE SIXTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES AND BY THE OHIO CONSTITUTION, BECAUSE TRIAL COUNSEL FAILED TO REQUEST A JURY INSTRUCTION FOR VOLUNTARY MANSLAUGHTER."

I.

{¶16} In his First Assignment of Error, Becker contends that the jury's determination that he did not act in self-defense is against the manifest weight of the evidence.

**Standard of Appellate Review – Manifest Weight.**

{¶17} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

{¶18} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541(1997), *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with

the fact finder's resolution of the conflicting testimony. *Thompkins* at 387, 678 N.E.2d 541, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982) (quotation marks omitted); *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶25, citing *Thompkins.*

**{¶19}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

*Self-defense*

**{¶20}** R.C. 2901.05(A) provides,

(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense *other than self-defense, defense of another, or defense of the accused's residence presented as described in division (B)(1) of this section*, is upon the accused.

Emphasis added.

{¶21} "The state's new burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal, and the Tenth District correctly declined to review the state's rebuttal of self-defense for sufficiency of the evidence." *State v. Messenger*, __Ohio St.3d__, 2022-Ohio-4562, ¶ 27.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

{¶22} R.C. 2903.02(B) states "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." In Count One, the state alleged that Becker caused the death of Gates as a proximate result of committing or attempting to commit felonious assault, an offense of violence, in violation of R.C. 2903.11. Becker does not challenge the sufficiency of the evidence supporting the jury's finding of guilt on the felony murder charge.

{¶23} At the close of Becker's jury trial, the trial court provided the jury with an instruction regarding self-defense, which means that the trial court concluded that the record contained evidence that tends to support that Becker used the force in self-defense when he shot and killed Gates. R.C. 2901.05(B)(1); *State v. Messenger*, __Ohio St.3d__, 2022-Ohio-4562, ¶ 26. The guilty verdict means that the state met its burden of persuading the jury beyond a reasonable doubt that Becker was not acting in self-defense when he killed Gates. Id.

{¶24} The state is required "'to disprove self-defense by proving beyond a reasonable doubt that [the defendant] (1) was at fault in creating the situation giving rise to the affray, OR (2) did not have a bona fide belief that he was in imminent danger of death or great bodily harm for which the use of deadly force was his only means of escape, OR (3) did violate a duty to retreat or avoid the danger.'" *State v. Messenger*, 10th Dist. No. 19AP-879, 2021-Ohio-2044, ¶ 36, *quoting State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31; *State v. Robbins,* 58 Ohio St.2d 74, 79, 388 N.E.2d 755(1979) (citations omitted); *See also, State v. Barker,* 2nd Dist. Montgomery No. 29227, 2022-Ohio-3756, ¶27; *State v. Evans,* 8th Dist. Cuyahoga No. 79895, 2002-Ohio-2610, ¶ 53; *State v. Hamilton,* 12th Dist. Butler No CA2001-04-098, 2002-Ohio-3862, ¶17..

{¶25} The second element of self-defense requires that the evidence tends to show that the accused had reasonable grounds to believe or an honest belief, even if mistaken, that he was in imminent or immediate danger of death or great bodily harm.  In *State v. Thomas,* the Ohio Supreme Court explained,

> [T]he second element of self-defense is a combined subjective and objective test.  As this court established in *State v. Sheets* (1926), 115 Ohio St. 308, 310, 152 N.E. 664, self-defense "is placed on the grounds of the *bona fides* of defendant's belief, and reasonableness therefor, and whether, under the circumstances, he exercised a careful and proper use of his own faculties." (Emphasis sic.) *See, also, McGaw v. State* (1931), 123 Ohio St. 196, 174 N.E. 741, paragraph two of the syllabus.  In *Koss,* we once again

stated this test by approving similar jury instructions to those given in the case sub judice:

"In determining whether the Defendant had reasonable grounds for an *honest* belief that she was in imminent danger, you must put yourself in the position of the Defendant * * *. You must consider the conduct of [the assailant] and determine if such acts and words caused the Defendant to *reasonably* and *honestly* believe that she was about to be killed or to receive great bodily harm.'" (Emphasis added.) *Koss,* 49 Ohio St.3d at 216, 551 N.E.2d at 973. Thus, the jury first must consider the defendant's situation objectively, that is, whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack, she *reasonably* believed she was in imminent danger. See 1 LaFave & Scott, Substantive Criminal Law (1986, Supp.1996) 654, Supp. 71, Section 5.7. See, also, generally, *State v. Shane* (1992), 63 Ohio St.3d 630, 634, 590 N.E.2d 272, 276…Then, if the objective standard is met, the jury must determine if, subjectively, this particular defendant had an honest belief that she was in imminent danger. See 1 LaFave & Scott, Substantive Criminal Law (1986, Supp.1996) 654, Supp. 71, Section 5.7. See, also, generally, *Shane, supra*, 63 Ohio St.3d at 634, 590 N.E.2d at 276….

77 Ohio St.3d 323, 330-331, 673 N.E.2d 1339(1997).

{¶26} Here, the evidence does not support that Becker possessed the necessary objective and subjective beliefs he was in imminent or immediate danger of death or great

bodily harm.   Generally, neither words alone nor fear itself will constitute evidence of serious provocation. "[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." *State v. Shane,* 63 Ohio St.3d 630, 634-45, 590 N.E.2d 272 (1992)."   Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack,* 82 Ohio St.3d 198, 201, 694 N.E.2d 1328.  Cases have held that a victim's simple pushing or punching does not constitute sufficient provocation to incite the use of deadly force in most situations. See, *State v. Koballa,* 8th Dist. Cuyahoga No. 82013, 2003-Ohio-3535 (concluding that sufficient provocation did not exist when the victim grabbed the defendant by the testicles and the arm); *State v. Poe* 4th Dist. Jackson No. 00CA9, 2000-Ohio-1966 (concluding that the victim's conduct in approaching the defendant with a hammer and stating "come on" did not constitute sufficient provocation). *State v. Pack*, 4th Dist. Pike No. 93CA525, 1994 WL 274429(June 20, 1994) ("We find that a mere shove and a swing (which appellant by his own testimony ducked) are insufficient as a matter of law to constitute serious provocation reasonably sufficient to incite or arouse appellant into using deadly force.").

{¶27}  Although stated in terms of provocation, we find the same analysis would apply to whether a defendant, by reason of the actions of the victim, possessed the necessary objective and subjective beliefs he was in imminent or immediate danger of death or great bodily harm.  Even setting aside the question of who the aggressor was, Becker testified that Gates did not have any sort of weapon in his hands at any time during the altercation. No evidence was presented that Becker himself was aware of any violent propensity of Gates.  Gates struck Becker with his fist. Becker can be seen pouring

alcohol on the apartment's door handle. No evidence was presented that Becker had suffered any bruises or other injuries as a result of his claim that Gates had punched him. If Becker's fear was only of physical harm, he was allowed by law only to use an amount of force that was not likely to cause death or great bodily harm. Becker's decision to shoot Gates was deadly force and was disproportionate to the threat he faced under these circumstances.

{¶28} Becker made no attempt to retreat before using deadly force against Gates. The evidence presented demonstrated that Gates's blood alcohol content was .324 grams per deciliter. No one other than Becker and Gates were present in the apartment at the time of the shooting.

{¶29} While Becker was free to argue that he was justified in using deadly force, and the trial court instructed the jury accordingly, the jury may have chosen to discredit his testimony. The evidence indicated that Gates was injured but alive when Becker exited the apartment. Becker can be seen pouring alcohol on the apartment's door handle. Becker made no attempt to summon assistance for Gates. Becker was found with notes that he had made to himself concerning the incident. The jury saw Becker and all the witnesses subjected to cross-examination. The jury also reviewed the Ring camera video.

{¶30} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Becker was convicted. We further find there is substantial evidence proving beyond a reasonable doubt that Becker was not acting in self-defense when he killed Gates. Therefore, in light of the evidence discussed above, as well as the record

in its entirety, we do not find the jury clearly lost its way concluding that Becker murdered Gates and that he was not acting in self-defense.

**{¶31}** Becker's First Assignment of Error is overruled.

II.

**{¶32}** In his Second Assignment of Error, Becker maintains that his trial counsel was ineffective by not requesting the jury be instructed on the inferior degree offense of voluntary manslaughter.

**Standard of Appellate Review**

**{¶33}** "To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that 'counsel's representation fell below an objective standard of reasonableness.' Id., at 688, 104 S.Ct. 2052. In addition, to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' Id. at 694, 104 S.Ct. 2052." *Andtus v. Texas,* 590 U.S. __, 140 S.Ct. 1875, 1881, 207 L.Ed.2d 335 (June 15, 2020).

**Issue for Appellate Review**: *Whether there is a reasonable probability that, but for counsel's failure to request a jury instruction on voluntary manslaughter, the result of the proceeding would have been different.*

**{¶34}** Voluntary manslaughter is defined in R.C. 2903.03(A),

> No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation

occasioned by the victim that is reasonably sufficient to incite the person

into using deadly force, shall knowingly cause the death of another.

**{¶35}** Voluntary manslaughter is not a lesser-included offense of murder, but rather is an inferior degree of murder. *State v. Tyler*, 50 Ohio St.3d 24, 36, 553 N.E.2d 576(1990), *superseded by constitutional amendment in part on other grounds State v. Smith (1997), 80 Ohio St.3d 89, 103 at n. 4, 684 N.E.2d 668, 684.* Nonetheless, when determining whether an instruction on voluntary manslaughter should have been given, we apply the same test utilized when determining whether an instruction on a lesser-included offense should have been given. *State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272(1992). An instruction on voluntary manslaughter is appropriate when "the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." Id.

**{¶36}** "Before giving a jury instruction on voluntary manslaughter in a murder case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." *Shane,* 63 Ohio St.3d at 632, 590 N.E.2d 272. "The trial judge is required to decide this issue as a matter of law, in view of the specific facts of the individual case. The trial judge should evaluate the evidence in the light most favorable to the defendant, without weighing the persuasiveness of the evidence." Id. at 637, *citing State v. Wilkins*, 64 Ohio St.2d 382, 388, 415 N.E.2d 303(1980). "An inquiry into the mitigating circumstances of provocation must be broken down into both objective and subjective components." *Shane* at 634.

{¶37} When determining whether provocation was reasonably sufficient to induce sudden passion or sudden fit of rage, an objective standard must be applied. *Shane* at 634. "For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Shane* 63 Ohio St.3d at 635, 415 N.E.2d 303. Thus, the court must furnish "the standard of what constitutes adequate provocation, i.e., that provocation which would cause a reasonable person to act out of passion rather than reason." (Citations omitted.) *Shane* at 634, fn. 2. "If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction." *Shane* at 364. The subjective component of the analysis requires an assessment of "whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage." Id. "Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack*, 82 Ohio St.3d 198, 201, 694 N.E.2d 1328(1998).

{¶38} Unlike self-defense, the issue of who was the aggressor is not the determinative issue in a voluntary manslaughter defense; rather the appellant must show that he acted under a sudden rage or passion. The trial court should have given an instruction on voluntary manslaughter if the evidence presented at trial demonstrated that Becker had killed Gates while under the influence of a sudden passion or fit of rage caused by provocation from Gates that was serious enough to incite him into using deadly force.

{¶39} Testimony that he did not intend to kill his victim does not entitle a defendant to a lesser-included offense instruction. *See State v. Campbell*, 69 Ohio St.3d 38, 48, 630 N.E.2d 339; *State v. Thomas*, 40 Ohio St.3d 213, 217–218, 533 N.E.2d 286(1988). *State v. Wright*, 4th Dist. No. 01CA2781, 2002–Ohio–1462, ¶ 26. Even though the defendant's own testimony may constitute some evidence supporting a lesser offense, if the evidence on whole does not *reasonably* support an acquittal on the murder offense and a conviction on a lesser offense, the court should not instruct on the lesser offense. *Campbell*, 69 Ohio St.3d at 47, 630 N.E.2d 339; *Shane*, 63 Ohio St.3d 632–633. "To require an instruction * * * every time "some evidence," however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense." *Shane* at 633, 590 N.E.2d 272.

{¶40} As we discussed in our disposition of Becker's First Assignment of Error, *supra*, Becker was not justified in using deadly force. Becker testified that Gates did not have any sort of weapon in his hands at any time during the altercation. No evidence was presented that Becker himself was aware of any violent propensity of Gates. Gates struck Becker with his fist. Gates's blood alcohol content was .324 grams per deciliter. No one other than Becker and Gates were present in the apartment at the time of the shooting. No evidence was presented that Becker suffered any injury as a result of Gates punching him. The only act that could arguably provoke a rage is when Gates punched Becker in his face. However, a punch in the face is far from sufficient to cause the ordinary person to become angry beyond his or her control. *State v. Linzy,* 5th Dist. Richland No. 2021-CA-33, 2013-Ohio-1129, ¶82.

{¶41} In concluding that trial counsel was not ineffective for not requesting an instruction on voluntary manslaughter, we find that the evidence presented at trial did not reasonably support both an acquittal on the murder charge and a conviction for voluntary manslaughter. Where the evidence does not support the instruction, the failure of trial counsel to request an instruction on a lesser-included offense does not fall below the objective standard of reasonableness. *State v. Daviduk*, 5th Dist. Stark No. 2001 CA 00340, 2002–Ohio–773, *2. Therefore, Becker is unable to satisfy the first prong of *Strickland.*

{¶42}  Becker's Second Assignment of Error is overruled.

{¶43}  The judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin P.J.,

Delaney, J., and

King, J., concur